UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

DAVID ROUNTREE,

                        Plaintiff,

                 v.

US BANK NA; US BANK NA as Trustee for
Harborview Mortgage Loan Trust 2006-1;
SELECT PORTFOLIO SERVICING, INC;
BANK OF AMERICA NA as successor to
Countrywide Home Loans Servicing
LP; and Does 1 through 100 inclusive,

                     Defendants.

------------------------------------------------------X

       15 Civ. 9018 (KPF)

       <u>OPINION AND ORDER</u>

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: <u>January 3, 2017</u>

KATHERINE POLK FAILLA, District Judge:

      This case is Plaintiff David Rountree's third attempt to nullify the foreclosure of real property he purchased in Boise, Idaho.  His two prior actions proceeded in Idaho's District Court for the Fourth Judicial District.  Both suits pitted Plaintiff, who represented himself, against a constellation of entities involved in the foreclosure.  Plaintiff, now represented by counsel, sues several of those same entities here, bringing substantially the same claims he raised in Idaho state court.

      Pending before this Court are two motions to dismiss Plaintiff's Complaint:  one filed by US Bank NA, individually and as Trustee for Harborview Mortgage Loan Trust 2006-1 ("US Bank"), and Select Portfolio Servicing, Inc. ("SPS"); and another filed by Bank of America, N.A. as successor to Countrywide Home Loans Servicing LP ("BANA") (collectively, "Defendants").

Defendants all raise similar defenses.  They argue that the *Rooker-Feldman* doctrine (discussed further herein) divests this Court of subject-matter jurisdiction to entertain Plaintiff's suit; that *res judicata* precludes Plaintiff from bringing the claims in his Complaint; and that, in any event, Plaintiff's causes of action are meritless.  The Court agrees that this combination of arguments defeats all of Plaintiff's claims.  Plaintiff's Complaint is dismissed accordingly.

That conclusion should resolve this case.  But one month after Defendants filed their motions to dismiss, and two months after the deadline for amending his Complaint had passed, Plaintiff requested leave to amend. Pursuant to the Court's instructions, Plaintiff attached a proposed Amended Complaint as an exhibit to his response to Defendants' motions to dismiss. Defendants argue that granting Plaintiff leave to amend would cause undue delay, work prejudice against Defendants, and be futile.  Here again, the Court agrees with Defendants.

This Opinion thus answers two questions.  First, does Plaintiff's Complaint withstand Defendants' motions to dismiss?  And second, should Plaintiff be granted leave to amend his Complaint?  Because the Court answers both questions "no," Defendants' motions to dismiss are granted in full, and Plaintiff's request for leave to amend his Complaint is denied.

# BACKGROUND[1]

## A.    Factual Background

Plaintiff's Complaint provides little in the way of background.  Notably, it glosses over Plaintiff's default of the promissory note (the "Promissory Note") underlying his mortgage loan, which precipitated years of litigation culminating in this lawsuit.  And the Complaint provides almost no dates to aid the Court in crafting a coherent timeline of the operative events in this case.  With these prefatory caveats in mind, the Court can discern the following:

---

[1]    When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court is generally permitted to "review only a narrow universe of materials." *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  But where, as here, a Defendant raises *res judicata* as a defense under Rule 12(b)(6), the Court may review "materials in the public record that are subject to judicial notice." *Bey* v. *City of N.Y.*, No. 13 Civ. 9103 (AJN), 2015 WL 363903, at *1 (S.D.N.Y. Jan. 28, 2015) (quoting *Kiryas Joel Alliance* v. *Village of Kiryas Joel*, 495 F. App'x 183, 187 n.2 (2d Cir. 2012) (summary order)); *accord Blue Tree Hotels Inv. (Canada), Ltd.* v. *Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (court considering Rule 12(b)(6) motion "may … look to public records, including complaints filed in state court").  And because Defendants have already contested subject-matter jurisdiction under Rule 12(b)(1), the Court may "consider evidence outside the pleadings, such as affidavits and exhibits." *Martinez* v. *Riverbay Corp.*, No. 16 Civ. 547 (KPF), 2016 WL 5818594, at *3 (S.D.N.Y. Oct. 4, 2016).

Accordingly, this Opinion draws on evidence from an array of sources in addition to Plaintiff's Complaint ("Compl." (Dkt. #1)).  Many of these sources are documents related to the foreclosure of Plaintiff's Idaho property:  a Notice of Assignment appended as an exhibit to the Complaint ("Notice of Assignment" (Dkt. #1-1)); a Trustee's Deed ("Trustee's Deed" (Dkt. #24-2)); a Notice of Trustee's Sale ("Notice of Trustee's Sale" (Dkt. #24-3, Ex. 4)); Plaintiff's Promissory Note ("Promissory Note" (Dkt. #26-4)); and Plaintiff's Deed of Trust ("Deed of Trust" (Dkt. #26-5)).  This Opinion also considers pleadings and orders from Plaintiff's Idaho state-court litigation.  Most of these documents are already in the record of this case:  a complaint Plaintiff filed in Idaho's Fourth Judicial District ("Idaho Compl." (Dkt. #24-3)) and an accompanying notice of *lis pendens* ("Idaho Notice of *Lis Pendens*" (Dkt. #26-6)); a stipulation of dismissal ("Idaho Stipulation" (Dkt. #26-7)); and various orders and judgments of Idaho's Fourth Judicial District ("7/12/12 Idaho Order" (Dkt. #26-8); "3/11/13 Idaho Order" (Dkt. #24-4); "4/1/13 Idaho Judgment" (Dkt. # 24-5); "10/29/15 Idaho Order" (Dkt. #24-6)).  The Court also considers Idaho state-court documents that are not presently in the record, but which are appropriate for judicial notice:  an answer and counterclaim Plaintiff filed in response to an eviction complaint from US Bank ("Idaho Answer and Countercl."); a Fourth Judicial District magistrate judge's order dismissing Plaintiff's counterclaims ("5/5/15 Idaho Order"); a magistrate judge's findings of fact and conclusions of law

In December 2005, Plaintiff obtained a mortgage loan from Countrywide Home Loans Servicing LP ("Countrywide").  (Compl. ¶ 15).  BANA is Countrywide's successor in interest.  (*Id.* at ¶ 8).  In order to obtain his mortgage, Plaintiff executed the Promissory Note and a deed of trust (the "Deed of Trust").  (*Id.* at ¶ 19).  Mortgage Electronic Registration Systems, Inc. ("MERS"), which is not a party to this action, was "[t]he original beneficiary and nominee of the Promissory Note."  (*Id.* at ¶ 15; Notice of Assignment).

Plaintiff's loan was in the amount of $503,920.00, which Plaintiff used to purchase real property at 4750 N. Rivervista Place, Boise, Idaho (the "Property").  (Compl. ¶ 15).  Pursuant to the Deed of Trust, Plaintiff conveyed the Property to Trustee Fidelity National Title Insurance Company (also a non-party here).  (Deed of Trust 1-3).  Plaintiff alleges that he was unqualified for his loan, and that Countrywide committed fraud by selling "Plaintiff a deceptive loan product."  (Compl. ¶ 13).

On September 1, 2009, Plaintiff failed to make a payment due under the Promissory Note.  (Notice of Trustee's Sale).  Consequently, on August 8, 2011,

---

concerning US Bank's eviction complaint ("5/27/15 Idaho Findings"); and the judgment entered on those findings of fact and conclusions of law ("5/27/15 Idaho Judgment").

This Opinion also considers a second, discrete issue:  whether Plaintiff is entitled to amend his Complaint.  Plaintiff filed a written request ("6/7/16 Leave Mot." (Dkt. #27)), to which US Bank and SPS responded ("6/10/16 Leave Opp." (Dkt. #28)).  In analyzing this issue, the Court cites the transcript of the telephone conference concerning Plaintiff's leave motion ("6/17/16 Tr."), which is not in the record (*see infra* note 3).  Finally, the Court will consider the Amended Complaint Plaintiff tendered ("Am. Compl." (Dkt. #32-1)).

For ease of reference, the parties' supporting memoranda are referred to as "US Bank Br." (a brief in which US Bank and SPS have joined) (Dkt. #25), "BANA Br." (Dkt. #26-1), "Pl. Opp." (Dkt. #32), "BANA Reply" (Dkt. #33), and "US Bank Reply" (Dkt. #34).

then-Trustee Recontrust Company, N.A. ("Recontrust"), yet another non-party, published a Notice of Trustee's Sale indicating that the Property would be sold at a non-judicial foreclosure auction on December 16, 2011.  (*Id.*).

Plaintiff appears to allege that the Promissory Note and Deed of Trust were assigned to US Bank in December 2005.  (Compl. ¶¶ 15, 22).  But the Notice of Assignment attached as an exhibit to Plaintiff's Complaint provides that on October 1, 2013, BANA, through SPS, assigned the Deed of Trust to US Bank.  (Notice of Assignment).  And in his opposition to Defendants' motions to dismiss, Plaintiff indicates that US Bank has purported to own the Promissory Note since 2007.  (Pl. Opp. 9).

In any case, Plaintiff alleges that the securitization of the Deed of Trust was invalid for a host of reasons — among them, (i) that US Bank violated the terms of its Pooling and Servicing Agreement (Compl. ¶¶ 16, 22-23); (ii) that neither SPS nor US Bank can establish a satisfactory chain of title (*id.* at ¶ 19); and (iii) that the individual who executed the 2013 assignment lacked authority to do so (*id.* at ¶¶ 28-29).   (*See also id.* at ¶ 26).  Plaintiff alleges that, as a result of these deficiencies, no defendant in this case "hold[s] a perfected and secured claim in the Property," and further that "Defendants are estopped and precluded from asserting an unsecured claim against Plaintiff's estate."  (*Id.* at ¶ 27).

On July 18, 2014, US Bank purchased the Property at a Trustee's Sale. (10/29/15 Idaho Order 2; *see also* Trustee's Deed).

## B.     Procedural Background

This case's procedural history gives more shape to Plaintiff's dispute with Defendants.  Again, Plaintiff has twice before attempted to forestall or prevent foreclosure of the Property.  First, in 2011, Plaintiff sued BANA, SPS, MERS, and Recontrust in Idaho's Fourth Judicial District (the "Idaho Foreclosure Action"), bringing many of the same claims he raises in the instant Complaint. Second, in 2015, Plaintiff unsuccessfully defended against an eviction action that US Bank initiated in that same court (the "Idaho Eviction Action"). Finally, Plaintiff filed his instant Complaint against Defendants.  The Court considers all three suits in turn.

But first, a primer on Idaho foreclosure law.  In Idaho, foreclosure "is not a judicial proceeding." *Trotter* v. *Bank of N.Y. Mellon*, 275 P.3d 857, 861 (Idaho 2012).  Instead, Idaho Code §§ 45-1502 through 45-1515 "provide[] a comprehensive regulatory scheme for non-judicial foreclosure of deeds of trust." *Spencer* v. *Jameson*, 211 P.3d 106, 115 (Idaho 2009).  Accordingly, in Idaho, foreclosure occurs "outside of the judicial process," and thus "provide[s] [an] express-lane alternative to foreclosure in the judicial system and strip[s] borrowers of protections embedded in a judicial foreclosure." *Fed. Home Loan Mortg. Corp.* v. *Appel*, 137 P.3d 429, 433 n.1 (Idaho 2006).  Therefore, no foreclosing entity in this case was required to obtain a foreclosure judgment from an Idaho court before foreclosing on the Property.

### 1.      The Idaho Foreclosure Action

On December 12, 2011, Plaintiff filed a *pro se* complaint and a notice of *lis pendens* against BANA, SPS, MERS and Recontrust.  (Idaho Compl.; Idaho Notice of *Lis Pendens*).  Plaintiff's Idaho complaint is difficult to follow, but its thrust is that the named defendants lacked authority to foreclose on the Property.  (Idaho Compl. 2, 9-14).   Central to this contention were Plaintiff's allegations that the defendants (i) had failed to produce the "wet ink" (i.e., original) version of the Promissory Note (*id.* at 10-11, 15), and (ii) lacked standing to foreclose on the Property (*id.* at 13-15).  Although styled as a complaint seeking "Declaratory Judgement [sic] of Verification of Debt," the complaint also sought coercive relief, such as removal of "all derogatory reporting with the credit bureaus" and "full reconveyance o[f] the Deed of Trust." (*Id.* at 1, 16).

On July 10, 2012, Plaintiff voluntarily dismissed with prejudice BANA and Recontrust from the Idaho Foreclosure Action.  (Idaho Stipulation).  On July 12, 2012, the Fourth Judicial District entered an order (the "July 12, 2012 Order") granting that stipulation.  (7/12/12 Idaho Order).   That order provides:  "[BANA] and Recontrust ... shall be dismissed with prejudice, for the reason that the parties have resolved the differences between them." (*Id.*).

MERS and SPS then moved for judgment on the pleadings on November 2, 2012.  (3/11/13 Idaho Order 1).  The Fourth Judicial District granted that motion in an order dated March 11, 2013 (the "March 11, 2013 Order"), and entered a judgment dismissing with prejudice Plaintiff's Idaho

7

complaint on April 1, 2013.  (*Id.* at 5; 4/1/13 Idaho Judgment).  In the March 11, 2013 Order, the Fourth Judicial District rejected Plaintiff's argument that MERS and SPS lacked standing to foreclose on the Property.  (3/11/13 Idaho Order 2-3).  And in reaching that conclusion, the court held that Idaho law did not require a foreclosing entity to produce a "wet ink" promissory note before initiating a non-judicial foreclosure.  (*Id.* at 3).

### 2. The Idaho Eviction Action

Because Plaintiff refused to leave the Property, on October 9, 2014, US Bank filed a complaint for eviction in the Fourth Judicial District. (10/29/15 Idaho Order 1-2).  On March 10, 2015, Plaintiff filed a *pro se* answer and counterclaim.  (Idaho Answer and Countercl.).  Plaintiff brought six counterclaims in total; they tracked, and supplemented, the claims he raised in his Idaho complaint.  (*Id.* at 5-23).  Plaintiff sought (i) a declaratory judgment that, *inter alia*, US Bank could not foreclose on the Property, because the assignment of the Deed of Trust to US Bank was invalid (*id.* at 15-17); (ii) an injunction halting the foreclosure (*id.* at 17); (iii) cancellation of allegedly fraudulent documents in the Ada County (Idaho) Recorder's Office concerning the foreclosure of the Property (*id.* at 17-18); (iv) a judgment of quiet title (*id.* at 18-20); (v) $1,500,000 in damages, because US Bank conspired to defraud Plaintiff of his rights in the Property and to violate the covenant of good faith and fair dealing (*id.* at 20-22); and (vi) attorney's fees and costs (*id.* at 22).

US Bank moved to dismiss Plaintiff's counterclaims, arguing that the March 11, 2013 Order collaterally estopped Plaintiff from asserting his counterclaims against US Bank. (10/29/15 Idaho Order 2-3). A magistrate judge in the Fourth Judicial District agreed, and on May 5, 2015, entered an order dismissing Plaintiff's counterclaims (the "May 5, 2015 Order"). (5/5/15 Idaho Order).

Plaintiff appealed the dismissal. (10/29/15 Idaho Order 3). On appeal to the district court, a district judge affirmed the dismissal of Plaintiff's counterclaims in an order dated October 29, 2015 (the "October 29, 2015 Order"), reasoning that Plaintiff was collaterally estopped from bringing his counterclaims against US Bank. (*Id.* at 5-6).

On May 27, 2015, the same magistrate judge who granted US Bank's motion to dismiss entered findings of fact and conclusions of law concerning US Bank's underlying eviction complaint (the "May 27, 2015 Findings"). (5/27/15 Idaho Findings). The magistrate judge held that Plaintiff's continued occupancy of the Property was "wrongful," that "possession should be granted to" US Bank, and that US Bank had a right to recover the Property. (*Id.* at 2). That same day, the magistrate judge entered a judgment of eviction against Plaintiff. (5/27/15 Idaho Judgment). Plaintiff abandoned the Property on or before July 24, 2015. (10/29/15 Idaho Order 3).

### 3. The Instant Case

Plaintiff, represented by counsel, filed his Complaint in this Court on November 17, 2015. (Dkt. #1). The defendants named in his Complaint were

9

all parties to the Idaho Foreclosure Action (SPS and BANA) or the Idaho Eviction Action (US Bank).[2]  And the claims in Plaintiff's Complaint mirror many of the claims he raised *pro se* in Idaho state court.

The seven counts in Plaintiff's Complaint merit careful attention here, because their contours and the specific relief they seek bear on the Court's resolution of Defendants' *Rooker-Feldman* and *res judicata* defenses.  Plaintiff has complicated the Court's reading of the Complaint by failing to identify which counts correspond to which Defendants.  In their motions to dismiss, however, Defendants challenge all seven counts of Plaintiff's Complaint.  And in turn, the Court will assume that all seven counts are brought against all Defendants.  The counts are:

(i)   Count I — Declaratory Judgment:  Plaintiff seeks a declaratory judgment that, *inter alia*, Defendants have no right to foreclose on the Property.  (Compl. ¶¶ 30-34).

(ii)  Count II — Fraudulent Concealment:  Plaintiff alleges that Defendants concealed material terms of the mortgage loan Plaintiff used to purchase the Property, including the fact that Plaintiff's mortgage loan was securitized.  (*Id.* at ¶¶ 35-43).   Had Plaintiff known of

---

[2]   The caption of Plaintiff's Complaint names "Does 1 through 100 inclusive" as defendants.  (Compl. 1).  In his Complaint, Plaintiff identifies these parties as "individuals or corporations that aided and abetted ... the civil conspiracy to 'churn' or put the Plaintiff in a series of loans which are the subject of this lawsuit."  (*Id.* at ¶ 9).  But Plaintiff makes no substantive allegations about these "Doe" defendants in his Complaint.  "[W]here the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *Askew* v. *Lindsey*, No. 15 Civ. 7496 (KMK), 2016 WL 4992641, at *7 (S.D.N.Y. Sept. 16, 2016) (quoting *Dove* v. *Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999)); *see also Crichlow* v. *Fischer*, No. 12 Civ. 7774 (NSR), 2015 WL 678725, at *9-10 (S.D.N.Y. Feb. 17, 2015) (dismissing *sua sponte* defendants named in caption of complaint but not mentioned elsewhere).  Accordingly, Does 1 through 100 are dismissed *sua sponte*.

these concealed facts, he claims, he would not have entered into his mortgage loan. (*Id.*).

(iii) <u>Count III — Intentional Infliction of Emotional Distress</u>: Plaintiff alleges that Defendants' "fraudulent foreclosure proceedings" have caused him to suffer emotional harm. (*Id.* at ¶¶ 44-52).

(iv) <u>Count IV — Slander of Title</u>: By publishing false documents concerning the foreclosure of the Property, without holding title to the Property, Defendants slandered Plaintiff's title. (*Id.* at ¶¶ 53-60).

(v) <u>Count V — Quiet Title</u>: Because Defendants lack lawful title in the Property, Plaintiff asks this Court to "enter a judgment … quieting title as to Defendants." (*Id.* at ¶¶ 61-66).

(vi) <u>Count VI — Civil Conspiracy</u>: Plaintiff alleges that Defendants conspired to defraud Plaintiff "[i]n connection with the application for and consummation of the [mortgage] loan." (*Id.* at ¶¶ 67-73).

(vii) <u>Count VII — Breach of the Covenant of Good Faith and Fair Dealing</u>: As far as the Court can tell, this Count alleges that Defendants did not act in good faith because they did not properly service Plaintiff's mortgage loan; failed to modify the loan; and "present[ed] a false and invalid '[a]ssignment' of the loan documents knowing that the assignment was false and invalid." (*Id.* at ¶¶ 74-80).

On March 4, 2016, the Court issued an Order (the "March 4, 2016 Order") setting deadlines for Plaintiff to amend his Complaint and for Defendants to file motions to dismiss. (Dkt. #22). That Order gave Plaintiff until April 1, 2016, to file an Amended Complaint, and directed Defendants to file motions to dismiss by May 6, 2016. (*Id.*). Plaintiff was ordered to file an opposition to Defendants' motions by June 13, 2016. (*Id.*).

April 1 passed without Plaintiff filing an Amended Complaint. Defendants timely filed their motions to dismiss. (Dkt. #23, 26). Then, on June 7, 2016 — two months after the deadline, one month after Defendants

11

had filed their motions, and one week before his opposition papers were due —
Plaintiff filed a letter motion seeking leave to amend his Complaint.  (6/7/16
Leave Mot.).  In his motion, Plaintiff explained that he had mistakenly recorded
the date on which the Amended Complaint was due, and offered to file his
Amended Complaint on June 13, 2016.  (*Id.* at 1-2).  Plaintiff did not attach a
proposed Amended Complaint to his letter motion.

US Bank and SPS filed a letter motion opposing Plaintiffs' request for
leave to amend.  (6/10/16 Leave Opp.).  They argued that allowing Plaintiff to
amend his Complaint would cause undue delay and prejudice Defendants.  (*Id.*
at 2-3).  And even though Plaintiff had not yet tendered an Amended
Complaint, US Bank and SPS argued that any attempt at amendment would be
futile because of the preclusive effect of the Idaho state-court judgments.  (*Id.*
at 2).

The Court held a telephone conference on Plaintiffs' request for leave to
amend on June 17, 2016.[3]  During the conference, Plaintiff reiterated that he
had failed the file the Amended Complaint because of a clerical error.
(6/17/16 Tr. 5-6).  Plaintiff added that although his "basic claim" remained the
same, he had discovered new facts regarding the chain of assignments of his

---

[3]     At the conclusion of the telephone conference, the Court ordered Plaintiff to obtain a
copy of the conference's transcript.  Plaintiff did not comply with this instruction.  On
December 15, 2016, the Court issued a written Order directing Plaintiff to procure a
copy of the transcript, and to submit a letter to the Court by December 16, 2016,
indicating that he had done so.  (Dkt. #35).  Plaintiff responded by letter on
December 20, 2016, writing that he had ordered a copy of the transcript and that it
would be available in two weeks' time.  (Dkt. #36).  As a result, the transcript of the
June 17, 2016 telephone conference is not yet in the record of this case.  However, the
Court has obtained a copy of the transcript, and cites it herein.

mortgage and a 2014 trustee's sale that would strengthen the allegations in his Complaint. (*Id.* at 7-8). BANA stated that it wished to join in US Bank's and SPS's letter motion, and added that Plaintiff's request for leave to amend was untimely and would be futile. (*Id.* at 3, 9-10). The Court agreed to accept Defendants' written and oral submissions in considering their opposition to Plaintiff's request for leave to amend. (*Id.* at 12).

On June 24, 2016, Plaintiff filed his opposition to Defendants' motions to dismiss, attaching a proposed Amended Complaint as an exhibit. (Pl. Opp., Ex. A). Defendants each filed separate replies on July 8, 2016. (Dkt. #33, 34).

## DISCUSSION

To review, this Opinion addresses two issues. The first is whether Plaintiff's Complaint survives Defendants' motions to dismiss. The second is whether Plaintiff should be granted leave to amend his Complaint. For the reasons stated herein, the Court resolves both issues against Plaintiff.

Defendants urge several grounds for dismissal. They move to dismiss under Rule 12(b)(1), arguing that the *Rooker-Feldman* doctrine deprives this Court of subject-matter jurisdiction to entertain this suit. And they move for dismissal under Rule 12(b)(6), arguing that *res judicata* precludes Plaintiff from bringing the claims in his Complaint, and that in any event these claims lack merit. The Court concludes that every count in Plaintiff's Complaint must be dismissed as to all Defendants.[4]

---

[4]    Plaintiff hinted at the inevitability of this outcome during the June 17, 2016 telephone conference. In explaining why he was seeking leave to amend one month after Defendants had filed their motions to dismiss, Plaintiff remarked: "[W]e couldn't

13

As for Plaintiff's request for leave to amend, the Court declines to extend Plaintiff this opportunity.  Relying on Rule 15(a), Defendants argue that allowing Plaintiff to amend his Complaint would cause undue delay, prejudice Defendants, and be futile.  The Court agrees, and denies Plaintiff's request for leave to amend.

## A.      The Court Grants Defendants' Motions to Dismiss

### 1.      Applicable Law

#### a.      Motions to Dismiss Under Rule 12(b)(1)

Because Defendants have moved for dismissal under Rules 12(b)(1) and 12(b)(6), the Court must first assess whether it has subject-matter jurisdiction to consider Plaintiff's Complaint.  *Wong* v. *CKX, Inc.*, 890 F. Supp. 2d 411, 414-15 (S.D.N.Y. 2012) ("When presented with a motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction and Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted, the Court must first analyze the Rule 12(b)(1) motion to determine whether the Court has subject matter jurisdiction necessary to consider the merits of the action.").

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Lyons* v. *Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova* v. *United States,* 201 F.3d 110, 113 (2d Cir. 2000)).  "In resolving a motion to dismiss under Rule 12(b)(1), the district court

---

respond to the motion[s] to dismiss based on the [C]omplaint as it presently stood." (6/17/16 Tr. 6).

must take all uncontroverted facts in the complaint … as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Fountain* v. *Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (quoting *Tandon* v. *Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (quoting *Makarova*, 201 F.3d at 113).

### b.   Motions to Dismiss Under Rule 12(b)(6)

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nicosia* v. *Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks omitted) (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re Whole Foods Mkt. Grp., Inc. Overcharging Litig.*, 167 F. Supp. 3d 524, 537 (S.D.N.Y. 2016) (quoting *Iqbal,* 556 U.S. at 678).  "[I]t is well settled that a court may dismiss a claim on *res judicata* or collateral estoppel grounds on a Rule 12(b)(6) motion." *Bd. of Managers of 195 Hudson St. Condo.* v. *Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d 463, 470 (S.D.N.Y. 2009) (citation omitted).

### 2.   Analysis

One conceptually difficult issue with this case is that Defendants' motions to dismiss succeed for different reasons.  Defendants all move for

dismissal under Rules 12(b)(1) and 12(b)(6).  And they all argue that *Rooker-Feldman*, *res judicata*, and the deficient merits of Plaintiff's Complaint should compel this Court to dismiss Plaintiff's Complaint in its entirety.  But even though Defendants press similar arguments, their jurisdictional and preclusion defenses rely on different state-court judgments, and implicate distinct analytic issues.  In turn, the most straightforward way to consider Defendants' motions to dismiss is to address each Defendant *seriatim*.  The Court will begin with BANA, turn to SPS, and conclude with US Bank.

### a.    BANA's Arguments for Dismissal

BANA raises several grounds for dismissal, but the Court need only consider two.  First, *Rooker-Feldman*:  BANA argues that Plaintiff's Complaint is in effect a challenge to the Fourth Judicial District's July 12, 2012 Order dismissing BANA from the Idaho Foreclosure Action.  (BANA Br. 4-5).  BANA claims that this Court thus lacks jurisdiction to adjudicate all seven counts in Plaintiff's Complaint.  (*Id.*).  Second, *res judicata*:  BANA argues that the Fourth Judicial District's July 12, 2012 Order precludes Plaintiff from bringing all seven counts in his Complaint.  (*Id.* at 6-9).  BANA's *Rooker-Feldman* argument fails, but its *res judicata* argument succeeds.

### i.    *Rooker-Feldman* Does Not Divest This Court of Subject-Matter Jurisdiction to Consider Plaintiff's Complaint as It Relates to BANA

28 U.S.C. § 1257 vests the United States Supreme Court with exclusive jurisdiction to hear "appeals from final state-court judgments."  *Lance* v. *Dennis*, 546 U.S. 459, 463 (2006) (per curiam).  Thus, "under what has come to

16

be known as the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Id.* (discussing *District of Columbia Court of Appeals* v. *Feldman,* 460 U.S. 462, 482 (1983), and *Rooker* v. *Fidelity Trust Co.,* 263 U.S. 413, 416 (1923)).  "Under this doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments, including claims that are inextricably intertwined with a prior determination of a state court." *Harriot* v. *JP Morgan Chase Bank NA*, No. 16 Civ. 211 (GBD), 2016 WL 6561407, at *3 (S.D.N.Y. Oct. 21, 2016) (internal quotation marks and citations omitted). Courts sparingly apply *Rooker-Feldman*.  *See Exxon Mobil Corp.* v. *Saudi Basic Indus. Corp.*, 544 U.S. 280, 287-88 (2005) (collecting cases).

BANA claims that Plaintiff's Complaint attempts to undo the Fourth Judicial District's July 12, 2012 Order dismissing BANA from the Idaho Foreclosure Action.  This argument misapprehends *Rooker-Feldman* and Idaho foreclosure law.

A party invoking *Rooker-Feldman* must meet four "requirements":

> First, the federal-court plaintiff must have lost in state court.  Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment[.]"  Third, the plaintiff must "invite district court review and rejection of [that] judgment[ ]."  Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced" — i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. [5]

---

[5]    The Court pauses to note a deficiency in Plaintiff's opposition to Defendants' motions to dismiss.  In rebutting Defendants' *Rooker-Feldman* arguments, Plaintiff appears to concede that BANA and SPS have met all four *Rooker-Feldman* elements.  (Pl. Opp. 3-5). He claims that "Defendants cannot show that Plaintiff meets the second and third

*Green* v. *Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (quoting *Hoblock* v. *Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).  Plaintiff concedes that BANA (like SPS and US Bank) has met the first and fourth of these requirements.  (Pl. Opp. 5).  The Court concludes that BANA has failed to meet the second or third.

To start, Plaintiff is not complaining of injuries caused by the Fourth Judicial District's July 12, 2012 Order.  "[T]he applicability of the *Rooker–Feldman* doctrine turns not on the *similarity* between a party's state-court and federal-court claims ... but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court."  *Alroy* v. *City of N.Y. Law Dep't*, 69 F. Supp. 3d 393, 400 (S.D.N.Y. 2014) (emphases in original) (quoting *McKithen* v. *Brown*, 481 F.3d 89, 97-98 (2d Cir. 2007)).  This requirement of a "causal relationship" is met "where ... the state court itself is the decision-maker whose action produce[d] the injury."  *Id.* (quoting *Sindone* v. *Kelly*, 439 F. Supp. 2d 268, 272 (S.D.N.Y. 2006)).   But the Fourth Judicial District did not produce any of Plaintiff's alleged injuries when it issued the July 12, 2012 Order.  That order simply endorsed Plaintiff's voluntary dismissal of BANA from the Idaho Foreclosure Action.

---

[*Rooker-Feldman*] factors," but his arguments on this score relate solely to *US Bank's* failure to prove its *Rooker-Feldman* defense.  (*Id.*).  Put simply, there is good reason to conclude that Plaintiff has not met his "burden of proving by a preponderance of the evidence that [subject-matter jurisdiction] exists."  *Fountain* v. *Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (quoting *Makarova* v. *United States,* 201 F.3d 110, 113 (2d Cir. 2000)).  Defendants' *Rooker-Feldman* arguments, however, are perfunctory.  And the Court is not willing to hold that it lacks jurisdiction on the basis of a fairly limited round of arguments.  Thus, it is incumbent upon the Court to conduct a wholesale *Rooker-Feldman* analysis for each Defendant in this case.

For similar reasons, BANA has not satisfied the third *Rooker-Feldman* requirement. Plaintiff is not asking this Court to review the July 12, 2012 Order. True, many of the claims Plaintiff brings in his Complaint are similar (or identical) to claims he brought in the Idaho Foreclosure Action. And as the Court will explain, BANA's *res judicata* argument succeeds for this exact reason. But BANA's insistence that the slim daylight between Plaintiffs' state-court and federal-court claims divests this Court of jurisdiction elides the distinction between *res judicata* and *Rooker-Feldman*. *See Hoblock*, 422 F.3d at 92 ("[T]he narrow *Rooker-Feldman* inquiry is distinct from the question whether claim preclusion … or issue preclusion … will defeat a federal plaintiff's suit."). Nothing in Plaintiff's Complaint suggests that he is seeking to reverse the Fourth Judicial District's dismissal of BANA from the Idaho Foreclosure Action.

One more point bears mention here, because it helps illustrate why BANA has not met *Rooker-Feldman*'s second or third requirements. There exists a long line of cases in this Circuit considering the effect of *Rooker-Feldman* when "a mortgagor … file[s] suit in federal court after a state court issued an adverse foreclosure judgment." *Nath* v. *JP Morgan Chase Bank*, No. 15 Civ. 3937 (KMK), 2016 WL 5791193, at *6 (S.D.N.Y. Sept. 30, 2016). Those cases follow a similar pattern: "Courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker–Feldman* doctrine." *Webster* v. *Wells Fargo Bank, N.A.*, No. 08 Civ. 10145 (LAP), 2009 WL 5178654, at *5 (S.D.N.Y. Dec. 23, 2009) (citation omitted), *aff'd sub nom. Webster* v. *Penzetta*, 458 F. App'x 23 (2d Cir.)

19

(summary order), *as amended* (Jan. 24, 2012); *see, e.g.*, *Nath*, 2016 WL 5791193, at *6 (collecting cases).

*Rooker-Feldman* imposes this jurisdictional bar because a mortgagor who comes to federal court to challenge (tacitly or directly) an adverse state-court foreclosure judgment asks "the federal court to review the state proceedings and determine that *the foreclosure judgment* was issued in error." *Vossbrinck* v. *Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) (per curiam) (emphasis added); *see, e.g.*, *id.* at 425-27 (*Rooker-Feldman* barred federal court from voiding state court "Judgment of Strict Foreclosure"); *Riley* v. *Comm'r of Fin. of City of N.Y.*, 618 F. App'x 16, 17 (2d Cir. 2015) (summary order) (district court correctly declined to exercise jurisdiction over plaintiff's complaint seeking declaratory judgment of ownership and removal of clouds on title, because state-court *in rem* tax-foreclosure proceeding decided conclusively that plaintiff did not own subject property); *Graham* v. *Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 503-04 (S.D.N.Y. 2016) (district court lacked jurisdiction over claims that challenged state-court "judgment of foreclosure and sale").

BANA's hurdle is that no judgment of foreclosure was ever issued in this case. All seven of the counts in Plaintiff's Complaint derive from Plaintiff's belief that the foreclosure of the Property was wrongful. Recall, however, that Idaho is a non-judicial foreclosure state. *Trotter*, 275 P.3d at 861. Any injury Plaintiff claims as a consequence of the foreclosure was the result of Idaho's "comprehensive regulatory scheme for non-judicial foreclosure." *Spencer*, 211 P.3d at 115.

Plaintiff's Complaint thus takes aim at the conduct of private entities that foreclosed on the Property, *not* a state court that permitted this conduct to go forward. And because Plaintiff's injuries were not caused by a state-court foreclosure judgment (the second *Rooker-Feldman* requirement), it seems unlikely that Plaintiff is inviting review of a state-court foreclosure judgment (the third). *See In re Residential Capital, LLC*, No. 12-12020 (MG), 2013 WL 6227582, at *2, *7 (Bankr. S.D.N.Y. Nov. 27, 2013).

Accordingly, *Rooker-Feldman* does not divest this Court of subject-matter jurisdiction over Plaintiff's suit, insofar as it relates to BANA. The Court will thus consider the merits of Plaintiff's Complaint.

### ii. *Res Judicata* Precludes Plaintiff from Bringing Any of the Counts in His Complaint Against BANA

Although BANA's *Rooker-Feldman* defense fails, its *res judicata* claim succeeds. Plaintiff is precluded from bringing any of the counts in his Complaint against BANA. As a preliminary matter, BANA (like SPS and US Bank) appears to argue that New York law controls this Court's *res judicata* analysis. (BANA Br. 6; US Bank Br. 5). Not so. "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *O'Connor* v. *Pierson*, 568 F.3d 64, 69 (2d Cir. 2009) (quoting *Migra* v. *Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984)). That means that this Court "must use the *res judicata* doctrine of" Idaho to determine whether

Plaintiff is precluded from suing BANA. *Logan* v. *Matveevskii*, 175 F. Supp. 3d 209, 233 (S.D.N.Y. 2016) (emphasis added) (citation omitted).

In Idaho, "[t]he doctrine of *res judicata* covers both claim preclusion (true *res judicata*) and issue preclusion (collateral estoppel)." *Ticor Title Co.* v. *Stanion*, 157 P.3d 613, 617 (Idaho 2007). However, Idaho courts use "[s]eparate tests … to determine whether claim preclusion or issue preclusion applies." *Id.* Because BANA's *res judicata* defense sounds in traditional "claim" preclusion, the Court will consider this branch of Idaho's *res judicata* doctrine.

"For claim preclusion to bar a subsequent action there are three requirements:  [i] same parties; [ii] same claim; and [iii] final judgment." *Andrus* v. *Nicholson*, 186 P.3d 630, 633 (Idaho 2008) (quoting *Ticor*, 157 P.3d at 618). The contours of all three requirements are familiar.

The first requirement mandates that "*res judicata* … bars the presentation of [a] claim in a subsequent lawsuit between the same parties or their privies." *Andrus*, 186 P.3d at 633 (emphasis added) (quoting *Devil Creek Ranch, Inc.* v. *Cedar Mesa Reservoir and Canal Co.*, 851 P.2d 348, 351 (Idaho 1993)).

Under the second requirement, "claim preclusion … is not limited to theories that were actually litigated in the prior lawsuit." *Andrus*, 186 P.3d at 633. Rather, in Idaho, "claim preclusion bars not only subsequent relitigation of a claim previously asserted, but also subsequent relitigation of any claims relating to the same cause of action which were actually made or which might

22

have been made." *Hindmarsh* v. *Mock*, 57 P.3d 803, 805 (Idaho 2002).  To determine whether a party asserting *res judicata* has proven an identity of claims, Idaho follows the "transactional" approach:  A "prior adjudication 'extinguishes all claims arising out of the same transaction or series of transactions out of which the cause of action arose.'" *Andrus*, 186 P.3d at 622 (quoting *Diamond* v. *Farmers Group, Inc.,* 804 P.2d 319, 323 (Idaho 1990)). "[W]hether a group of facts constitutes a 'transaction'" turns on "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."  *Id.* (internal quotation marks and citation omitted).

Finally, the third *res judicata* requirement provides that "a valid final judgment rendered on the merits by a court of competent jurisdiction is an absolute bar to a subsequent action between the same parties upon the same claim." *Hindmarsh*, 57 P.3d at 805.  As relevant here, in Idaho, the preclusive "effect of a Rule 41 stipulation of dismissal with prejudice" is equivalent to that of a final judgment entered after trial.  *Kawai Farms, Inc.* v. *Longstreet*, 826 P.2d 1322, 1326 (Idaho 1992).

BANA has satisfied all three *res judicata* elements.  The June 12, 2012 Order precludes Plaintiff from bringing any of the claims in his Complaint against BANA.

First, there is complete identity of the parties between the Idaho Foreclosure Action and the instant case.  Plaintiff named BANA as a defendant in the complaint he filed in the Fourth Judicial District.

Second, all seven of the counts in Plaintiffs Complaint were, or could have been, brought against BANA in the Idaho Foreclosure Action.  Count I seeks essentially the identical declaratory relief that Plaintiff sought in the Idaho Foreclosure Action.  Counts II through VII arise out of the same transaction that was the subject of the Idaho Foreclosure Action:  Plaintiff's receipt of the mortgage loan and Promissory Note, Plaintiff's default, the securitization of the Deed of Trust, and BANA's foreclosure.   And the thrust of Counts II through VII — that BANA's foreclosure was wrongful because it lacked a valid interest in the Property — formed the core of Plaintiff's Idaho complaint.  Put simply, Plaintiff's Complaint here and his complaint in the Idaho Foreclosure Action arise out of the same transaction.  *See Andrus*, 186 P.3d at 622.

Finally, the Fourth Judicial District's July 12, 2012 Order was a valid final judgment that is entitled to preclusive effect.  The Fourth Judicial District dismissed BANA from the Idaho Foreclosure Action with prejudice.  That disposition is binding on this Court.

Plaintiff tries to resist this conclusion in five ways, although he does not differentiate between the parties' respective *res judicata* arguments in doing so. In any event, all of Plaintiff's arguments are meritless.  First, Plaintiff argues that the declaratory-judgment exception to *res judicata* limits the preclusive

24

effect of the Fourth Judicial District's judgments.  (Pl. Opp. 6).  He claims, without citation, that Idaho recognizes this exception.  (*Id.*). [6]  But even if Idaho did recognize the exception, it would have no bearing on the instant case.  The declaratory-judgment exception "limits the preclusive effect of [a] declaratory judgment to the 'subject matter of the declaratory relief sought.'"  *Duane Reade, Inc.* v. *St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 196 (2d Cir. 2010) (quoting *Harborside Refrigerated Servs., Inc.* v. *Vogel*, 959 F.2d 368, 372 (2d Cir. 1992)).  However, "the declaratory judgment exception ... applies when 'the prior action involved *only* a request for declaratory relief.'"  *Id.* (emphasis in original) (quoting *Harborside*, 959 F.2d at 372) (citing 18A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4446, at 313-14 (2d ed. 2002)).  Plaintiff's Idaho complaint requested declaratory as well as coercive relief.  Thus, even assuming that Idaho does recognize the declaratory-judgment exception, the exception would not diminish the preclusive effect of the Fourth Judicial District's judgments in the Idaho Foreclosure Action.

Second, Plaintiff argues that the judgments of the Fourth Judicial District should not be accorded preclusive effect because Plaintiff represented

---

[6]     Conversely, Defendants argue that the declaratory-judgment exception does not limit the preclusive effect of the Fourth Judicial District's judgments in the Idaho Foreclosure Action, because in his Idaho complaint Plaintiff sought declaratory and coercive relief. (US Bank Br. 6-9; US Bank Reply 6-7; BANA Reply 3).  However, Defendants cite no Idaho law in support of this contention.  The lone Idaho state-court case Defendants do cite — *Stilwyn, Inc.* v. *Rokan Corp.*, 353 P.3d 1067 (Idaho 2015) (*see* US Bank Br. 6 n.1) — considered the preclusive effect of a *federal* judgment, and thus applied "*federal common law.*"  *Id.* at 1073 (emphasis added) (citation omitted).  As far as the Court can tell, Idaho courts have not yet opined on the applicability of the declaratory-judgment exception under Idaho law.

himself before that court.  (Pl. Opp. 6-7).  But in Idaho, "[p]ro se civil litigants are not accorded special latitude merely because they chose to proceed through litigation without the assistance of an attorney.  Further, *pro se* litigants are held to the same standards and rules as those represented by an attorney." *PHH Mortg.* v. *Nickerson*, 374 P.3d 551, 559 (Idaho 2016) (emphasis added) (quoting *Colafranceschi* v. *Briley,* 355 P.3d 1261, 1264 (Idaho 2015)), *reh'g denied* (July 19, 2016).  Plaintiff's argument, which appears to be rooted in considerations of equity, is inconsistent with these principles.

Third, Plaintiff argues that he "failed to name an indispensable party" in the Idaho Foreclosure Action — US Bank — and thus the judgments rendered in that action are not preclusive.  (Pl. Opp. 7).  However, in Idaho, "*res judicata ...* bars the presentation of [a] claim in a subsequent lawsuit between the same parties *or their privies.*"  *Andrus*, 186 P.3d at 633 (emphases added) (quoting *Devil Creek Ranch*, 851 P.2d at 351).  In any case, as the Court will discuss *infra*, the May 5, 2015 Order from the Idaho Eviction Action precludes Plaintiff from bringing this action against US Bank.  And to the extent that Plaintiff argues that his failure to name an indispensable party in the Idaho Foreclosure Action constitutes a ground for rejecting BANA's *res judicata* defense, the Court notes that such a claim is more properly raised as a ground for dismissing a complaint under Rule 12(b)(7).  Fed. R. Civ. P. 12(b)(7); *see, e.g.*, *Fed. Ins. Co.* v. *SafeNet, Inc.*, 758 F. Supp. 2d 251, 257 (S.D.N.Y. 2010).

Fourth, Plaintiff argues that the instant litigation and the Idaho Foreclosure Action involve different claims.  (Pl. Opp. 7-8).  The Idaho

Foreclosure Action, Plaintiff argues, centered on whether Defendants had standing to foreclose on the Property, while the instant case "relate[s] to the various assignments" of the Promissory Note and Deed of Trust.  (*Id.* at 8).  The Complaint makes plain that this comparison is incorrect.  Only Count VII clearly takes issue with Defendants' assignments of the loan documents.  (Compl. ¶ 79).  And in any event, the claims Plaintiff brought in the Idaho Foreclosure Action and the claims he brings in this Court all concern the same "transaction," and are thus considered the same claims for *res judicata* purposes.  *Andrus*, 186 P.3d at 622.

Finally, Plaintiff argues that Idaho's "ripeness exception" bars "the application of *res judicata* in the instant action."  (Pl. Opp. 9 (emphasis added)).  He claims that "[t]he ripeness exception applies when something happens after the first suit that triggers the filing of the second suit."  (*Id.*).  The precipitating event in this case was Plaintiff's discovery, upon obtaining a loan audit in October 2014, that Defendants had "affirmative[ly] conceal[ed] ... relevant facts."  (*Id.*).

This argument fails for many reasons.  To begin, although in his Complaint Plaintiff alleges that Defendants concealed facts from him (*see* Compl. ¶¶ 36, 42, 77), he does not argue that this concealment somehow prevented him from raising certain claims in Idaho state court.  Notably, Plaintiff makes no mention of the October 2014 loan audit in his Complaint, which he filed in December 2015.  (Compl.).  For this reason, the Court declines to consider Plaintiff's belatedly raised "ripeness exception" argument.

*See Wright* v. *Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (collecting cases for the proposition that a party may not amend its pleading through its opposition papers); *Shemian* v. *Research In Motion Ltd.*, No. 11 Civ. 4068 (RJS), 2013 WL 1285779, at *14 (S.D.N.Y. Mar. 29, 2013) (emphasizing same proposition), *aff'd*, 570 F. App'x 32 (2d Cir. 2014) (summary order).

Plaintiff's presentation of his "ripeness exception" claim suggests that his real issue with Defendants is that they fraudulently concealed material information.  And as a result of this concealment, Plaintiff seems to allege, he only learned of material facts — for example, that US Bank was the holder of his Promissory Note — after he filed his Idaho complaint.  Again, Plaintiff's Complaint does not raise this claim.  Moreover, the Complaint contains virtually no dates that might plausibly substantiate this claim.  Plaintiff notes that BANA assigned the Promissory Note and Deed of Trust to US Bank on October 1, 2013.  (Compl. ¶ 28, Ex. A).  But it is entirely unclear from the Complaint if Plaintiff believes that Defendants concealed *this* assignment from him.  Indeed, it is unclear if this assignment forms the basis of *any* of the counts in Plaintiff's Complaint.  Whether deemed a "ripeness" or "fraudulent concealment" argument, Plaintiff's final effort to resist *res judicata* fails.

In sum, BANA has demonstrated that all three elements of *res judicata* lie.  Plaintiff is thus precluded from bringing any of the counts in his Complaint against BANA, and BANA's motion to dismiss is granted.

28

### b.    SPS's Arguments for Dismissal

SPS also argues that the counts in Plaintiff's Complaint are barred by *Rooker-Feldman* and *res judicata*.[7]  Like BANA, SPS's *Rooker-Feldman* argument is unavailing.  And, like BANA, SPS's *res judicata* argument succeeds.  Because those conclusions resolve fully the counts in Plaintiff's Complaint as they relate to SPS, SPS's motion to dismiss is granted.

### i.    *Rooker-Feldman* Does Not Divest This Court of Subject-Matter Jurisdiction to Consider Plaintiff's Complaint as It Relates to SPS

Without identifying which judgment of Idaho's Fourth Judicial District Plaintiff impermissibly challenges, SPS argues that *Rooker-Feldman* prohibits this Court from entertaining every count in Plaintiff's Complaint.  SPS's presentation of this argument highlights its fatal flaw.  SPS has failed to establish that Plaintiff complains of injuries inflicted by, or seeks review of, a judgment of the Fourth Judicial District.

To review, in order to prove that *Rooker-Feldman* deprives this Court of subject-matter jurisdiction, SPS must demonstrate (i) that Plaintiff "lost in state court; (ii) that he "complain[s] of injuries caused by a state-court judgment"; (iii) that Plaintiff "invite[s] district court review and rejection of

---

[7]    There is an ambiguity in the memorandum supporting US Bank's and SPS's joint motion to dismiss.  The memorandum's argument section opens by alleging that every count in Plaintiff's Complaint *except* Count II is barred by *res judicata* and *Rooker-Feldman*.  (US Bank Br. 4).  But the memorandum's *res judicata* and *Rooker-Feldman* arguments appear to address all seven counts.  (*Id.* at 4-11).  And a section of the brief that deals specifically with the merits of Count II provides:  "Besides being barred by *res judicata* and/or the *Rooker-Feldman* doctrine … Plaintiff's second cause of action … fails to state a claim and is barred by the applicable statute of limitations."  (*Id.* at 13).  The Court will assume that SPS and US Bank argue that *res judicata* and *Rooker-Feldman* bar all seven counts in Plaintiff's Complaint.

[that] judgment[]"; and (iv) that this state-court judgment was entered before Plaintiff filed his Complaint in this action. *Green*, 585 F.3d at 101 (quoting *Hoblock*, 422 F.3d at 85). Plaintiff does not contest that SPS can satisfy the first and fourth *Rooker-Feldman* requirements. (Pl. Opp. 5). But the Court is convinced that SPS cannot satisfy the second or third.

In support of its *Rooker-Feldman* argument, SPS seems to argue that adjudicating Plaintiff's Complaint would require this Court to sit in review of three Idaho judgments: (i) the June 12, 2012 Order dismissing BANA from the Idaho Foreclosure Action; (ii) the March 11, 2013 Order granting SPS's motion for judgment on the pleadings; and (iii) the October 29, 2015 Order dismissing Plaintiff's Idaho counterclaims in the Idaho Eviction Action. SPS's reliance on all three of these state-court judgments is misguided.

First, the June 12, 2012 Order does not support SPS's *Rooker-Feldman* argument. As explained *supra*, nothing in Plaintiff's Complaint suggests that he is complaining of an injury caused by the June 12, 2012 Order, or that he seeks to undo that order.

Nor does Plaintiff appear to be complaining of an injury inflicted by the March 11, 2013 Order. In that order, the Fourth Judicial District rejected all three claims Plaintiff brought in his Idaho complaint: (i) that SPS and MERS lacked "standing" to enforce the Promissory Note because they had not given Plaintiff the "wet ink" note; (ii) that MERS was not allowed to assign the Promissory Note and Deed of Trust; and (iii) that SPS and MERS lacked Article

III standing.  (3/11/13 Order 2-5).  None of the counts in Plaintiff's Complaint alleges an injury caused by these conclusions.

Finally, to the extent that SPS argues that Plaintiff is complaining of an injury inflicted by the October 29, 2015 Order, that argument is unavailing for two reasons.  First, SPS does not explain how Plaintiff's Complaint, which brings seven causes of action related to the foreclosure of the Property, complains of an injury wrought by the October 29, 2015 Order.  This order dealt with the narrow, subsequent issue of US Bank's authority to evict Plaintiff from the Property.

Second, even if SPS had demonstrated that Plaintiff is challenging the October 29, 2015 Order, this order was not binding on SPS, because SPS was not a party to the Idaho Eviction Action.  SPS argues that it enjoys a privity relationship with US Bank sufficient to extend the *res judicata* effect of the judgments in the Idaho Foreclosure Action (to which SPS was a party) to US Bank (which was not).  (US Bank Br. 9-10).  But "[t]he *Rooker–Feldman* doctrine does not bar actions by nonparties to [an] earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment."  *Lance*, 546 U.S. at 466.  And although courts in this Circuit have extended *Rooker-Feldman*'s jurisdictional bar to parties in privity with state-court litigants, *see Gould* v. *Airway Office, LLC*, No. 15 Civ. 7964 (PAE), 2016 WL 3948102, at *4 (S.D.N.Y. July 19, 2016), SPS has not demonstrated that it enjoys a privity relationship with US Bank sufficient to warrant such an extension here.

31

What is more, SPS (like BANA) overlooks the fact that Idaho practices non-judicial foreclosure.  Again, the thrust of Plaintiff's Complaint is that Defendants wrongfully foreclosed on the Property.  Under Idaho's statutory foreclosure scheme, that foreclosure involved no court action.  That gives little reason for the Court to conclude that Plaintiff is complaining of an injury caused by a state-court judgment, and SPS has not convinced the Court otherwise.

In sum, SPS's *Rooker-Feldman* argument fails.  This Court has jurisdiction to consider all seven counts of Plaintiff's Complaint as they relate to SPS.

### ii.   *Res Judicata* Precludes Plaintiff from Bringing Any of the Counts in His Complaint Against SPS

Like BANA, SPS has successfully litigated a foreclosure action against Plaintiff before.  The March 11, 2013 Order dismissed Plaintiff's Idaho Complaint against SPS, and entered judgment on the pleadings in SPS's favor. That judgment is entitled to preclusive effect, and it bars Plaintiff from bringing any of the counts in his Complaint against SPS.

Under Idaho law, SPS must prove three elements to prevail on its *res judicata* defense:  "[i] same parties; [ii] same claim; and [iii] final judgment." *Andrus*, 186 P.3d at 633 (quoting *Ticor*, 157 P.3d at 618).  SPS has made this showing.  First, SPS and Plaintiff were both parties to the Idaho Foreclosure Action.  Second, the claims Plaintiff brought in that litigation are identical to the claims he brings here.  To review, all of the counts in Plaintiff's Complaint were litigated (Count I) or could have been litigated (Counts II through VII) in

the Idaho Foreclosure Action.  Finally, the March 11, 2013 Order is a final
judgment against Plaintiff.  Because all three elements of a successful *res
judicata* defense lie, Plaintiff is precluded from bringing suit against SPS.

> ### c.    US Bank's Arguments for Dismissal

The only remaining defendant in this case is US Bank.  The arguments it
raises in its motion to dismiss (in which SPS joins) are familiar.  US Bank
argues that *Rooker-Feldman* and *res judicata* bar Plaintiff from bringing all of
the counts in his Complaint against US Bank.  Here too, the Court concludes
that US Bank's *Rooker-Feldman* argument fails, but its *res judicata* argument
succeeds.

> ### i.    *Rooker-Feldman* Does Not Divest This Court of
> ### Subject-Matter Jurisdiction to Consider Plaintiff's
> ### Complaint as It Relates to US Bank

As discussed above, one major flaw in US Bank's (and SPS's) *Rooker-
Feldman* argument is that it elides the distinction between the judgments that
the Fourth Judicial District rendered in the Idaho Foreclosure Action and the
Idaho Eviction Action.  For that reason, it is difficult to determine which state-
court judgment US Bank claims Plaintiff is seeking to reverse.

Having already concluded that neither the June 12, 2012 Order nor the
March 11, 2013 Order is a proper subject of a *Rooker-Feldman* defense, the
Court will not consider the jurisdictional effect of either decision here.  That
leaves the Fourth Judicial District's October 29, 2015 Order dismissing
Plaintiff's counterclaim in the Idaho Eviction Action.  This judgment does not
impose a jurisdictional bar to the Court's consideration of Plaintiff's Complaint.

The October 29, 2015 Order shares much in common with the March 11, 2013 Order.  Both denied Plaintiff's request for a declaratory judgment that would have prevented foreclosure of the Property.  And both rejected Plaintiff's contentions that Defendants lacked authority to foreclose on the Property. Neither order, however, is a judgment of foreclosure.  Neither order appears to have caused the injuries of which Plaintiff complains.  And Plaintiff challenges neither order in his Complaint.

US Bank argues that granting Plaintiff relief on his Complaint would "render meaningless" the October 29, 2015 Order.  (US Bank Br. 11)  But that argument does not speak to the two *Rooker-Feldman* requirements that have proven to be Defendants' shared stumbling blocks:  that Plaintiff "complain[] of injuries causes by [a] state-court judgment[], and that he "invite district court review and rejection of [that] judgment[]."  *Green*, 585 F.3d at 101 (quoting *Hoblock*, 422 F.3d at 85).  At bottom, US Bank has not established that Plaintiff is challenging the October 29, 2015 Order.

However, Plaintiff *might* be challenging a different state-court decision: The May 27, 2015 Findings that a Fourth Judicial District magistrate judge entered concerning US Bank's eviction complaint.  (5/27/15 Idaho Findings). Those findings provide:  "Possession of the Premises by [Plaintiff] is wrongful, and possession should be granted to [US Bank]."  (*Id.* at 2)  The magistrate judge who rendered those findings ordered "that [US Bank] … have and recover from [Plaintiff] and those claiming possession through [Plaintiff], the restitution and possession of [the Property]."  (*Id.*).

34

Plaintiff's Complaint alleges that US Bank lacks authority to foreclose on the Property, a claim that is at odds with the May 27, 2015 Findings. Thus, it could be argued that Plaintiff is complaining of an injury caused by the magistrate judge's May 27, 2015 Findings. And it could also be argued that Plaintiff seeks reversal of the same. At minimum, it appears that the counts in Plaintiff's Complaint may be "inextricably intertwined" with this magistrate judge's decision. *Harriot*, 2016 WL 6561407, at *3 (citation omitted).

US Bank, however, makes none of these arguments. Indeed, US Bank makes no mention of the May 27, 2015 Findings in its briefing. And like the other orders of the Fourth Judicial District that this Court has already considered, the May 27, 2015 Findings are not a judgment of foreclosure. Rather, the May 27, 2015 Findings address the subsequent issue of whether US Bank could evict Plaintiff from the Property. In turn, it is unclear whether these findings caused any of the injuries in Plaintiff's Complaint. It is equally unclear whether Plaintiff is challenging the May 27, 2015 Findings. Here too, the Court cannot hold that it lacks subject-matter jurisdiction in the face of these ambiguities.

Like BANA and SPS, US Bank has failed to demonstrate that *Rooker-Feldman* bars this Court from adjudicating Plaintiff's Complaint. The Court will thus turn to US Bank's *res judicata* defense.

ii.     ***Res Judicata* and Idaho's Compulsory-Counterclaim Rule Bar Plaintiff from Bringing Any of the Counts in His Complaint Against US Bank**

US Bank argues that "*res judicata* bars Plaintiff's relitigation of the claims [he] previously asserted against US Bank … as counterclaims in the Idaho Eviction Action." (US Bank Br. 10).  Not quite.  In Idaho, "claim preclusion 'is not applicable to the litigation of counterclaims.'"  *Stilwyn, Inc.* v. *Rokan Corp.*, 353 P.3d 1067, 1073 (Idaho 2015) (quoting *Joseph* v. *Darrar*, 472 P.2d 328, 331 (Idaho 1970)).   Thus, "[a]n action on a claim which was a permissive counterclaim in an earlier action, but which was not raised and litigated in that action" — i.e., a claim that *could have* been raised — "is not barred" by *res judicata*.  *Joseph*, 472 P.2d at 332.  And although "actions on claims properly classified in an earlier action as compulsory counterclaims" — i.e., claims that *should have* been raised — "are barred by a failure to raise them in the earlier action, … this is a bar arising not from the concept of *res judicata*, but from" Idaho Rule of Civil Procedure 13(a), which defines compulsory counterclaims.  *Id.* (emphasis added).  Of course, if an Idaho litigant raises a counterclaim (permissive or compulsory), and a court rejects that counterclaim in a merits decision, *res judicata* precludes the litigant from raising the counterclaim in a subsequent action.  *See id.*

Whether Plaintiff is barred from bringing the counts in his Complaint against US Bank, then, turns on two questions.  The first concerns *res judicata*:  Did Plaintiff bring any of these counts as counterclaims against US Bank, such that the October 27, 2015 Order dismissing Plaintiff's

36

counterclaims precludes him from relitigating them here?  The second flows from Idaho Rule 13(a):  Assuming that there are counts in Plaintiff's Complaint that Plaintiff could have brought as counterclaims in the Idaho Eviction Action, but did not, can they be classified as compulsory counterclaims?[8]  The answer to both questions is "yes."

First, Plaintiff pled Counts I (declaratory judgment), V (quiet title), and VI (civil conspiracy) of his Complaint as counterclaims in the Idaho Eviction Action.  (Idaho Answer and Countercl. 15-17, 18-22).  That litigation involved the same parties as the instant litigation (Plaintiff and US Bank).  The two litigations share three of the same claims.  And the Fourth Judicial District rejected all three of those claims in the October 27, 2015 Order.  Accordingly, *res judicata* precludes Plaintiff from asserting Counts I, V, and VI against US Bank in this Court.

Second, Idaho Rule 13(a) makes plain that Plaintiff should have pled Counts II (fraud in the concealment), III (intentional infliction of emotional distress), IV (slander of title), and VII (breach of the covenant of good faith and fair dealing) as compulsory counterclaims in the Idaho Eviction Action.  Under Idaho Rule 13(a), a compulsory counterclaim has two characteristics:

> A pleading must state as a counterclaim any claim that, at the time of its service, the pleader has against an opposing party if the claim … [i] arises out of the transaction or occurrence that is the

---

[8] This second issue raises a choice-of-law question:  Does the Court's classification of the claims in Plaintiff's Complaint as permissive or compulsory counterclaims depend on state or federal law?  Here, the distinction is academic.  Federal Rule of Civil Procedure 13(a) and (b) — which deal with permissive and compulsory counterclaims, respectively — are identical to Idaho Rule 13(a) and (b).  *Compare* Fed. R. Civ. P. 13(a)-(b), *with* Idaho R. Civ. P. 13(a)-(b).  The Court will cite to Idaho Rule 13(a) herein.

subject matter of the opposing party's claim; and [ii] does not require adding another party over whom the court cannot acquire jurisdiction.

Idaho R. Civ. P. 13(a).  Counts II, III, IV, and VII share both characteristics. First, these four claims "arise[] out of the transaction" that formed the basis of US Bank's eviction complaint:  US Bank's foreclosure of the Property, and its efforts to evict Plaintiff from it.  Second, Plaintiff could have raised all four claims as counterclaims in the Idaho Eviction Action without adding any parties to that litigation.  In short, Plaintiff should have pled Counts II, III, IV, and VII as compulsory counterclaims in the Idaho Eviction Action.  He cannot belatedly raise them as counts in his Complaint now.

*Res judicata* and Idaho Rule 13(a) thus prohibit Plaintiff from bringing all seven counts of his Complaint against US Bank.  In turn, the Court dismisses the Complaint as to US Bank.

## B.   The Court Denies Plaintiff's Request for Leave to Amend His Complaint

Because Defendants' motions to dismiss are granted in their entirety, the only remaining question is whether Plaintiff is entitled to amend his Complaint. Defendants argue that granting Plaintiff leave to amend would prejudice Defendants, cause undue delay, and ultimately be futile.  The Court agrees.

### 1.   Applicable Law

Rule 15(a)(1) grants a party an opportunity to "amend its pleading once as a matter of course within … 21 days after serving it, or … if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e),

38

or (f), whichever is earlier." Fed. R. Civ. P. 15(a). But once a party's time to amend under Rule 15(a)(1) has expired, Rule 15(a)(2) provides that it "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) adds: "The court should freely give leave when justice so requires." *Id.*; *see also Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("[T]he 'permissive standard' of Rule 15 'is consistent with our strong preference for resolving disputes on the merits.'" (quoting *Williams* v. *Citigroup Inc.,* 659 F.3d 208, 212-13 (2d Cir. 2011) (per curiam)).

Although "[l]eave to amend should be freely granted" pursuant to Rule 15(a)(2), this Court "has the discretion to deny leave if there [is] a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 159 (2d Cir.), *as amended* (Dec. 17, 2015) (quoting *Jin* v. *Metro. Life Ins. Co.,* 310 F.3d 84, 101 (2d Cir. 2002)). In general, however, "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *AEP Energy Servs. Gas Holding Co.* v. *Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting *Block* v. *First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)); *see also Ruotolo* v. *City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) ("Mere delay, … absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." (citation omitted)); *see generally Foman* v. *Davis,* 371 U.S. 178, 182 (1962).

## 2.    Analysis

Defendants have argued persuasively that granting Plaintiff leave to amend would be inconsistent with Rule 15(a)(2).  In so doing, Defendants do not suggest that Plaintiff acted in bad faith when he requested leave to amend. But they argue that every other relevant factor — prejudice, undue delay, and futility — militates in favor of denying leave.  The Court agrees.

First, granting Plaintiff leave to amend would prejudice Defendants. Plaintiff did not simply request leave to amend after the April 1, 2016 deadline that the Court set in its March 4, 2016 Order.  He requested leave to amend one month after Defendants filed their motions to dismiss.  Granting Plaintiff leave to amend would harm Defendants, because it would force them to expend time and money responding to the Amended Complaint.  And it would upend Defendants' settled expectations that Plaintiff intended to stand on his initial Complaint.  At the same time, granting Plaintiff's request would benefit Plaintiff by allowing him to file an Amended Complaint that he drafted after reading two motions to dismiss that identified the deficiencies in his original Complaint.

Second, granting Plaintiff leave to amend would cause undue delay. Plaintiff requested leave to amend *months* after this Court ordered him to file an Amended Complaint.  The dilatory consequences of granting Plaintiff's request are obvious.  If Plaintiff files an Amended Complaint, Defendants will have to submit new motions to dismiss.  Plaintiff will submit a new opposition. Defendants will submit new replies.  Months of additional litigation may be in store.

What is more, the Court credits US Bank's and SPS's argument that Plaintiff's intent in seeking leave to amend is to delay these proceedings. (6/10/16 Leave Opp. 2). Plaintiff insists that he failed to file timely his Amended Complaint because he incorrectly calendared the date on which it was due. That justification strains credulity. Plaintiff's claimed scheduling error might explain (if not excuse) why Plaintiff filed his Amended Complaint after the April 1, 2016 deadline. But it does not explain why Plaintiff waited one month after receiving Defendants' motions to dismiss before requesting leave to amend.

Finally, and most significantly, the Court is confident that granting Plaintiff leave to amend would be futile. "Granting leave to amend is 'futile' if a revised claim still 'could not withstand a motion to dismiss pursuant to Rule 12(b)(6).'" *Jordan* v. *Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2015) (quoting *Dougherty* v. *Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir. 2002)). Such is the case here.

There are three salient differences between the Amended Complaint and Plaintiff's original Complaint. First, in the Amended Complaint Plaintiff alleges that Defendants "concealed" facts from him, and that Plaintiff only learned of these facts after conducting a loan audit in October 2014. (Am. Compl. ¶¶ 13, 19, 25, 30-31, 48, 51, 58). As a consequence of Defendants' alleged subterfuge, "Plaintiff could not possibly have fully and fairly litigated the matters set forth in this case" in Idaho state court. (*Id.* at ¶ 25). Second, the Amended Complaint contains more facts about the chain of assignments of the

41

Deed of Trust.  (*Id.* at ¶¶ 26-31).  It appears that Plaintiff principally complains about two of these assignments:  (i) a July 29, 2011 assignment from MERS to BANA ("Assignment 1") and (ii) the December 2, 2013 assignment from BANA to US Bank ("Assignment 2").  (*Id.* at ¶¶ 11-14, 31, 41, 45-47, 55-57, 62-65). Finally, Plaintiff has changed his theories of relief.  He brings five causes of action in his Amended Complaint:  (i) declaratory relief; (ii) constructive fraud; (iii) "[v]iolations of the Truth in Lending Act — 15 U.S.C. § 1640"; (iv) slander of title; and (v) wrongful foreclosure.  (*Id.* at ¶¶ 39-74).  None of these changes to the Amended Complaint saves Plaintiff's lawsuit.  His Amended Complaint does not state a claim for relief.

To begin, the Amended Complaint belies Plaintiff's claim that Defendants "concealed" facts from him.  It appears that Plaintiff learned of the chain of assignments of his Deed of Trust after he obtained a loan audit in October 2014.  That just begs the question:  Why didn't Plaintiff obtain a loan audit sooner?  (*See* BANA Reply Br. 6).  And why does the fact that Plaintiff learned about the chain of assignments only after he obtained the loan audit suggest that Defendants *concealed* this information from him?  Plaintiff appears to allege that Defendants' failure to "notif[y]" him of Assignments 1 and 2 is tantamount to Defendants concealing that information.  (Am. Compl. ¶¶ 11, 14).  But the Amended Complaint's allegations of concealment are too conclusory, and too scattershot, to suggest plausibly that Defendants took efforts to hide this information from Plaintiff.  *See Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (court reviewing Rule 12(b)(6) motion to

dismiss not "bound to accept [complaint's] conclusory allegations or legal conclusions masquerading as factual conclusions" (quoting *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (Sotomayor, J.)).  As such, the Court rejects Plaintiff's allegations that Defendants' "concealment" prohibited him from "fully and fairly litigat[ing]" in Idaho state court "the matters" he addresses in his Amended Complaint.  (Am. Compl. ¶ 25).

And although Plaintiff has made new factual allegations, and modified his causes of action, his Amended Complaint fails to state a claim for relief. Like the Complaint, the Amended Complaint does not identify clearly which causes of action correspond to which defendants.  But even assuming that all five causes of action are brought against BANA, SPS, and US Bank, *res judicata* and Idaho Rule 13 bar Plaintiff from bringing any of these claims.  *See Taylor* v. *Riley*, 336 P.3d 256, 265 (Idaho 2014) ("A cause of action can be barred by a prior adjudication even though the theory of liability and supporting evidence differ from the cause of action actually litigated in the prior lawsuit....  The issue is whether both lawsuits arose out of the same transaction or series of transactions." (internal quotation marks and citation omitted)).

Insofar as the five amended counts are brought against BANA and SPS, they are precluded by the judgments in the Idaho Foreclosure Action.  The Amended Complaint and Plaintiff's Idaho complaint both name BANA and SPS as defendants.  The amended counts (like the original counts in the Complaint) arise out of the same transaction as the Idaho Foreclosure Action:  Plaintiff's mortgage default, the securitization of his Deed of Trust, and the foreclosure of

43

the Property.  Although the Amended Complaint focuses more intently on Defendants' assignments of the Deed of Trust than did the Complaint, these assignments "are related in time, space, origin, [and] motivation" to the facts Plaintiff alleged in his Idaho complaint.  *Andrus*, 186 P.3d at 622 (citation omitted).  (*Compare* Am. Compl. ¶ 25, 48 (alleging that "Defendants concealed the various void assignments" and "conspired to conceal the true identity of the owner and holder of the [Promissory] Note and Deed of Trust"), *with* Idaho Compl. 10 ("It is the *pattern and practice* of banking institutions to sell and/or assign loans, therefore it is uncertain who is actually the *current* ... note holder[.]" (emphases in original)).  Finally, the Fourth Judicial District's July 12, 2012 Order and March 11, 2013 Order are final judgments in BANA's and SPS's favor.  Accordingly, *res judicata* bars Plaintiff from bringing all five of his amended counts against SPS and BANA.

*Res judicata* and Idaho Rule 13(a) also bar Plaintiff from bringing the five counts in his Amended Complaint against US Bank.  Idaho Rule 13(a) does much of the work here.  Plaintiff brought only part of one of his amended counts as a counterclaim in the Idaho Eviction Action:  his request for a declaratory judgment, insofar as it seeks a declaration that US Bank lacks authority to foreclose on the Property.  The October 29, 2015 Order thus precludes Plaintiff from seeking the same declaratory relief in his Amended Complaint.  And the remaining causes of action in Plaintiff's Amended Complaint plainly should have been pled as compulsory counterclaims in the Idaho Eviction Action.  All arise from the foreclosure of the Property and US

44

Bank's eviction efforts.  Plaintiff would not have had to add a defendant to the Idaho Eviction Action in order to plead his amended counts as compulsory counterclaims.  And none of Plaintiff's amended causes of action relies on facts that post-date Plaintiff's March 10, 2015 filing of his answer and counterclaim in the Idaho Eviction Action.  Put simply:  Plaintiff should have pled his amended counts as compulsory counterclaims.  His attempt to raise them now is futile.

In sum, the Court concludes that granting Plaintiff leave to amend would be inconsistent with Rule 15(a)(2).  His request for leave is denied.

## CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are GRANTED, and Plaintiff's request for leave to amend his Complaint is DENIED.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      January 3, 2017
            New York, New York

_____
      KATHERINE POLK FAILLA
      United States District Judge

45